Please the court. My name is Mark Webb for appellants. Good morning. I would like to begin by saying that the lower court decision in this case, which was a decision based on a motion for summary judgment that was granted, we submit ignored major critical facts and also misapplied the law in this area. The law in this area has to do with essentially one issue. It's a single issue case for the court. Is there substantial right to control on the part of the parent company, the franchisor, such that it can be said that it is not dealing, so to speak, at arm's length and just giving the right to a franchise to do business under its name? We have prepared for your review the documents that actually cite all the numbers of areas of control. I've also blown them up, blown them up in poster board size. And with your permission, I'd like to use them in the argument. Thank you. But we would appreciate it when you speak, if you would speak at the microphone so that it gets recorded. As you can see, and I believe we've given to your clerk so you can look upon this easily with your documents, the numbers of areas that have to do with right to control that I believe the record will bear out, because we've also referenced them to every single page in the ER which is relevant to these. We're not just arguing this. These are referable to the record in areas of right to control that the cases say are important in deciding what the relationship is between the parent company and the franchisee. That is to say, is the parent company in fact controlling the franchisee? Does it actually have the right to control the franchisee, which I'll talk about in a minute, because the test isn't really whether it actually controls it, but rather whether it has the right to control it. And it doesn't have to have complete control. It simply has to have substantial control. I would just take what time I have, and I didn't say this in the beginning, but if I could please have a minute for rebuttal. Yes, but that shows your total time, so you'll have to help me. I do. Thank you, Your Honor. I'm just going to use my time to point out a couple of what I think are the most probative components of control in this case. In this case, the parent company requires that the franchise have a joint bank account for all the sales and purchases that are made. In other words, when one goes to the franchise to buy gasoline, it is necessary that you use a particular kind of card in order to make those purchases happen. Those purchases are then placed in a bank account. That bank account is joint, and what that means is that the parent company, Pacific Pride, actually has complete control of the money. That means Pacific Pride decides when they distribute the money, when they give the money, when, who gets what in terms of the amount of money. And I would just suggest that in thinking about this, it occurred to me that I know marriages that don't have that kind of relationship in terms of bank accounts. I certainly wouldn't let my husband get into my bank account like that.  Counsel, let me ask you this because you don't have a lot of time. I'll just tell you what's bothering me. Assuming that the franchisor exercised a great deal of control over the financial operations, the banking, how the credit card went in, all of the services related to what, all of the parts that were related to what the franchisor was franchising, which had to do with the financial aspects. Your client, as I understand it, it's very sad, but was hit by a truck that was driving on the premises, and it was caused by the negligence of that driver and the existence of this problem on the concrete that was being cleaned up. And that didn't seem to have anything to do with the franchise services. And so the question in my mind is how relevant is it that there's control over the money, the financial end of it, if what the accident didn't have anything to do with that? I would say two things to that, Your Honor. First of all, the cases in this area which control, I think all the parties agree that they do, are California cases. And the one that's the most recent is Syslaw. And in that case, there is an enumeration, I could cite you the page, of all the controls that were decided to be relevant in the court's opinion as to what is the salient factors in deciding control. And most of those have nothing to do with the particular incident at hand. But to answer your question, one case, Weiss v. Chevron, does make an allusion to that fact and does say, well, there's no proof from plaintiffs in this case that there's a connection between the areas that have the right to control and this particular accident. What I would say to Your Honor is that if that is the turning point in your mind, we have those facts as well. Why? Because if you look at the blowup or you look at the documents that you have, the area of safety, which is part three of this outline, talks about the fuel spill cleanup required. Now, if they write an operations manual, and by the way, another part of this outline talks about the mandatory nature of having to read this operations manual, not just by a manager, but by the whole staff, and it's in the record, then I suggest to you that the manner in which that fuel spill operation is cleaned up is anticipated there's going to be fuel spills at the gas station, there's going to be fuel spills, and they are required, as Mr. Walker was, to clean up the fuel. Then I think that if that fuel spill cleanup guideline is inadequate. Well, this is part of a condition of the franchise agreement, is that right? Yes, Your Honor. Well, does that necessarily mean that they're exercising control over that, or whether that's just a condition of they want to make sure that they don't lose their business or their business license or don't get into trouble because of violations of OSHA or whatever? The case, I'm sorry. So how do we, what evidence or what's showing in the record is that there was any actual control over that part? The cases talk about the right of the parent company to impose its will on the franchisee, and to me that means if it has the right to tell them how they're supposed to do a fuel spill, if they have the right to say to them in an operations meeting or in any way, shape, or form, whether they do so or they don't do so, and that's where I think the lower court missed it, because they're talking about actual control, whether they do so or they choose not to do so, I believe that covers your question. Is the joint bank account for all the proceeds that SF Petroleum brings in or only what it brings in through the Pacific Card use? The answer is only through the Pacific Pride card system, and I know there's a dispute here as to how much of that business is Pacific Pride business because of the declaration before the Court on that subject. I would say to Your Honor, Justice Roth, that there is a dispute of fact as to what percentage of their fuel comes from the Pacific Pride card system, and even if it were true that a minority of this fuel comes from the Pacific Pride system, that does not immunize them or inoculate them from the obligation to make safe the area where this happened. And where this happened is in the Pacific Pride Island area, and Mr. Walker was picking up Pacific Pride gasoline. So I see that I have just about a minute left, and I'm happy to answer your questions if you like, but our position is I think these documents show massive control, and also we tried to point out the lower court opinion, which I think shows that they didn't consider many of the facts that are important. Thank you very much. Thank you, counsel. You have about a minute for rebuttal. May it please the Court, Peter Hart on behalf of Pacific Pride Services. I think the Court's questions that it posed to Appellant's counsel are really getting to the nub of the issue here. This franchise agreement that existed between Pacific Pride and San Francisco Petroleum states, first and foremost, that the relationship is an independent contractor relationship. And I appreciate the fact that that is not a controlling issue in the case, but it is indicative of the intent of the parties and what the parties understood their relationship to be. Now, the facts submitted by the Appellant in support of the Appellant's brief don't really address the issue of what was substantial control. You see all of these things here, and one issue in particular that Appellant's counsel brought up was this notion that the franchisee's employees had to clean up fuel spills. Franchisee's employees have to clean up fuel spills because that's the law, and imposing that on them through a suggestion, not a mandate, but a suggestion in a franchise agreement creates no right of control over a franchisee of the nature that would allow for the imposition of liability here. The court in Syslaw and the court in Weiss looked at control in three areas, and those are the three areas that are the most important. The day-to-day operations, employment, and inventory. Looking at the facts in this case, Pacific Pride exercised no control over those three areas, and Judge Conte, in evaluating the evidence that was submitted, found that evidence to be insubstantial. Looking at the issue of employment, the only thing that San Francisco Petroleum was required to do was have one of its employees attend a single orientation on how the financial system worked with Pacific Pride. There was no orientation about the way in which they should operate their business. There was no orientation about how they should staff their business. There was no orientation about the day-to-day operations of the facility. On the issue of employment, there was no right to fire. There was no right to set compensation. There was no right to determine work schedules. There was no right to determine working conditions. And the interesting thing about this is that many of these facilities that Pacific Pride has franchise agreements with are facilities where there are no employees. These are card-locked systems where someone can drive up at 3 o'clock in the morning, activate the pumps by using the card that the person has, and there's no one there. So they are not controlling employment. They are not controlling working conditions. On the issue of inventory, it's clear that a company like San Francisco Petroleum has to provide the types of fuel that Pacific Pride customers are going to need. So making suggestions that we need unleaded, diesel, and things like that are not controlling, again, what it is that San Francisco Petroleum does. Judge Roth, I thought your question about the mix of the proceeds, do those proceeds go into a common account or do they go into a dedicated account? They go into a dedicated account because, as you know, this facility was 90% other transactions. It was not Pacific Pride. It was not like walking into McDonald's where the only thing you were going to do is provide or purchase something that McDonald's was providing. So these are things that make this much, much less of a direct control. Is there anything in the record that shows how much time the employees spent on the Pacific, Pacific Pride products as opposed to selling the other products? I don't think there's anything directly on point, Your Honor. I would just point out that the Pacific Pride islands are islands that require no employee interaction. The employee, the customer can go activate the pump by using his or her credit card and then pump their own fuel. They require no interaction with San Francisco Petroleum employees. The two cases that plaintiff's counsel submitted from districts in Pennsylvania, I think are not instructive on this issue. I look at those and the amount of control set forth in the franchise agreements there and the amount of control that was actually exercised in both of those cases was substantially more than what we have here with what was going on with Pacific Pride. So, Your Honor, I think to bring this down to the nub, what you have here is what is commonly referred to as the Cirrus or Star systems at your local bank. You go in, you have a credit card from Wells Fargo, but the only thing that's convenient is B of A. And you can use the ATM at B of A, but you can't tell me that Wells Fargo has somehow become responsible for B of A's condition because of the fact that they are allowing you to access B of A's ATM. I'll submit on that. Thank you, Your Honor. The court's permission. I just want to approach that exhibit for one moment. I wonder what counsel said. You've got to speak at the mic. If counsel's position is that this is sort of a credit card system and nothing else, I wonder why. It's a system in which the inventory is so strictly controlled. And when I say that, I'm just talking about gasoline. There are citations in the record that say that the products that are sold must be restricted. This is a quote from the record and from their own agreement and operations manual. They may not sell any product that Pacific Pride does not approve. And I suggest to Your Honor that if you use the example of a Wells Fargo card or a Bank of America card or a MasterCard or any kind of credit card you want. But that's true of all franchising agreements, isn't it? No, Your Honor. That's not true of all franchising. In the Syslock case, which involved 7-Eleven stores, they were free to sell closed cigarettes. And in the Wickham case, which is another case cited, they were free to sell alcohol and they were free not to sell alcohol. There was a freedom there in which they could pick their own inventory. If you look closely at this case, you will see that Judge Conte completely omitted the restriction on unauthorized products, which is a key component, I suggest to Your Honors, that that alone is enough to get to the jury. And I want to put it in this context to you since I only have a half a minute left. We're here because a motion for summary judgment was granted.  We never had a trial. There are issues that I believe a jury could easily conclude that there is a right to control here, not substantial, not actual control, because, in fact, there was no real control. Nobody was watching the ship. But the right to control was there. And with respect to the Drexel case, I believe we cited that case to Your Honors because it's a Third Circuit case. It's very illustrious. I'm not persuaded by the Third Circuit when I'm sitting here in California. We're never persuaded by it. Well, the interesting thing is this. In shepherdizing this area, there really are no – there's not a plethora of circuit decisions on it. There's no Ninth Circuit decision on it. Right. But that Third Circuit case is interesting because it uses State law. And the State law in Pennsylvania is not that different from the California law on this issue of the right to control. That's why we cited it. And, of course, we know that you're from the Third Circuit, Your Honor. All right. You have more than used your time. You're in the red. Thank you for your patience. Thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Tashima, Roth